**Heron v. Rosso**

C.P. of Delaware County, no. 91-11461.

*Richard L. Colden Jr.,* for petitioner.
*Hans Edward Solum Jr.,* for respondent.

CRONIN, *J.,* January 17, 1996—

## FACTUAL AND PROCEDURAL HISTORY

Joseph L. Heron, petitioner, and Susan J. Rosso, respondent, are the natural parents of one child, named Amy, who is 6 years of age. Pursuant to a complaint for custody filed by petitioner, a temporary order was entered by the Honorable Harry J. Bradley, of this court, which was later modified by the Honorable Joseph T. Labrum, also of this court. Judge Labrum's order granted petitioner visitation with his daughter, Amy Heron, each Saturday from 6:30 a.m. to 7 p.m. Thereafter, pursuant to a petition for contempt filed by petitioner, the Honorable Patricia Jenkins also entered an order which stated in part, that petitioner shall be permitted to take Amy Heron to religious services of his faith during the periods of lawful custody. Subsequent to the order entered by Judges Labrum and Jenkins, respondent again refused petitioner to have visitation with the child on April 28, 1995, May 6, 1995 and every Saturday thereafter through September 16, 1995. As a result, petitioner filed another petition for contempt against respondent, which was heard on October 13, 1995.

On October 13, 1995, this court entered a temporary order, reviewable in four weeks, granting petitioner overnight visitations from 6 p.m. Saturday evening to 7 p.m. Sunday evening and also ordering the parties to attend co-parenting classes. This court then held the petition in contempt in abeyance. On October 27, 1995, petitioner filed a notice of appeal to the Superior Court. On October 30, 1995, this court issued an order pursuant to Pa.R.A.P. 1925(b), directing petitioner to file a concise statement of matters complained of on appeal. On November 6, 1995, petitioner complied therewith and raised the following issues on appeal:

"(1) Plaintiff avers that this Honorable Court erred in the following particulars in changing his times for partial physical custody:

"(a) by sua sponte changing his visitation from Saturday morning, the court has prevented plaintiff from taking Amy to Seventh Day Adventist services while she was visiting with him. This is an abuse of the court's discretion and violates plaintiff's rights and the child's rights under the Pennsylvania Constitution Article 1, Section 3, his constitutionally recognized fundamental right as a parent and his rights and the child's rights under the Establishment and Freedom of Expression Clauses of the First Amendment of the United States Constitution; *Zummo v. Zummo,* 394 Pa. Super. 30, 574 A.2d 1130 (1990)

"(b) in requiring that plaintiff attend co-parenting classes in violation of his religious principles, this court abused its discretion and violated plaintiff's rights under the Pennsylvania Constitution Article 1, Section 3, his constitutionally recognized fundamental right as a parent and his rights under the Establishment and Freedom of Expression Clauses of the First Amendment of the United States Constitution;

"(c) in suggesting that Amy's attendance at Seventh Day Adventist church services with her father was not in her best interest, this court abused its discretion and violated his rights and the child's rights under the Pennsylvania Constitution Article 1, Section 3, his constitutionally recognized fundamental right as a parent and his rights and the child's rights under the Establishment and Freedom of Expression Clause of the First Amendment of the United States Constitution."

## LEGAL ANALYSIS

The essence of petitioner's issues on appeal is that by changing the visitation from Saturday evening to Sunday evening, it effectively prevented petitioner from taking his daughter to church, thereby interfering with his freedom of expression rights contained in the First Amendment of the United States Constitution and the Pennsylvania Constitution, as well as otherwise interfering with his parental rights.

It is well settled that in all cases involving child custody, the paramount consideration is the best interests and welfare of the child. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977). All other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well-being. *In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983); *K.L.H. v. G.D.H.,* 318 Pa. Super. 330, 464 A.2d 1368 (1983); *Hall v. Mason,* 316 Pa. Super. 160, 462 A.2d 843 (1983). Pennsylvania courts have held that religion is an important matter and should be given some consideration in child custody cases, but it is not determinative. *K.L.H. v. G.D.H., supra.*

In the instant case, petitioner's partial custody consisted of one day per week with the child. During this period, petitioner's time with his daughter was dominated by his religious pursuits. That is to say, the majority of the time spent with his daughter was consumed by attending church services or travelling to and from church services. (N.T. p. 38.) As a result, the child's best interests were not being served and the child was deprived of the opportunity to build a relationship with petitioner. Thus, this court expanded said partial custody to include an overnight stay, but structured said custody at a time which would not be completely dominated by religious services. However, it did not prevent petitioner from instructing his child in his religious beliefs as Saturday was not the only day that this could occur, but was merely petitioner's preferred day. (N.T. p. 44.) Petitioner was specifically instructed that he could attend whatever service he wanted. (N.T. p. 49.) At no time did this court pass any judgment as to the type of religion to which the child was exposed or otherwise favor either parent's religion. Further, this court never placed any restrictions upon either parent taking the child to services or discussing religious beliefs. This court never interfered with petitioner's right to expose his child to his religious faith. Instead, the custody schedule provided petitioner with an opportunity to build a broader relationship with his daughter that is not centered exclusively upon religious beliefs.

Moreover, there were indications that petitioner's religious activities with his child were contrary to the child's best interests. For example, petitioner took the child to New York City to pass out anti-Catholic literature during the Papal visit. (N.T. p. 9.) This type of conduct is not a religious concern, but a behavioral concern that could subject the child to harm. The child

is only 6 years old and should not be exposed to such activities. Additionally, petitioner travelled to the child's school and had auditory hallucinations and prayed loudly. (N.T. p. 18.) Further, petitioner dresses the child in unusual clothing in such a manner that causes her embarrassment. (N.T. pp. 30, 31, 32.) As a result, the court indicated that it wanted objective professional advice to determine the impact, if any upon the child. (N.T. p. 55.)

Although a court cannot render value judgments on the merits of a particular view or belief, it can properly examine the effect that those views or beliefs have upon the development of the child involved in the custody dispute. *Egelkamp v. Egelkamp,* 362 Pa. Super. 269, 524 A.2d 501 (1987), which is what the court did in this case.

In support of his appeal, petitioner cites the case of *Zummo v. Zummo, supra,* wherein the court held that each parent may pursue whatever course of religious indoctrination which that parent sees fit, at that time, during periods of lawful custody or visitation. This court does not dispute this rule of law and in fact, has not issued any order or restriction preventing petitioner from teaching the child his religious beliefs from Saturday evening to Sunday evening, which is the time of his lawful custody. Because this court did not restrict petitioner's ability to expose the child to his religious beliefs, there was no need for testimony establishing a substantial risk of physical or mental harm to the child prior to placing any religion based restrictions upon the parent as required by *Zummo.*

Likewise, this case is easily distinguishable from *Stolarick v. Novak,* 401 Pa. Super. 171, 584 A.2d 1034 (1991), where the Superior Court held that the trial

court abused its discretion in taking the children from the father's home and awarding custody to the mother on the basis of the court's disapproval of the father's fundamentalist Christian beliefs. In the case at hand, petitioner did not lose any custody rights whatsoever. To the contrary, his custody rights were expanded to include overnight visitation. Further, this court did not disapprove or approve of petitioner's fundamentalist Christian beliefs. Rather, it issued a temporary order with the intent of causing petitioner to broaden his relationship with his child to include other activities as well as religious indoctrination.

This case more closely resembles *Rinehimer v. Rinehimer,* 336 Pa. Super. 446, 485 A.2d 1166 (1984). In that case, the court issued an order that effectively prevented the appellant from taking his son to Sunday morning services for most of the year. There, the court found that the partial custody schedule for the father was not designed to frustrate his religious viewpoint but was designed solely in the best interests of the child. The court determined that the lower court scrupulously avoided any comment which would result in one parent's religious beliefs being favored over the other. The lower court placed no prohibition upon either parent against taking the children to services of his or her faith, discussing religious beliefs or in any other way exposing the children to the parents' respective faiths.

In this case, like the *Rinehimer* case, although the order effectively prevented petitioner from taking the child to Saturday morning services, the order was not designed to frustrate petitioner's religious beliefs nor did it place any restrictions upon petitioner's desire to expose his child to his religion. Instead, the order was entered solely in the best interests of the child.

This court stressed that the order was temporary and was subject to review in four weeks or until such time as the court could receive some objective professional advice. (N.T. p. 55.)

As to the co-parenting counseling or psychological counseling, it in no way interferes with petitioner's religious freedom and the court has the right to evaluate the impact that any conduct, religious or otherwise, might have upon the child to determine what is in the child's best interests. *Egelkamp v. Egelkamp, supra.*

## CONCLUSION

For all the foregoing reasons, this court's order dated October 13, 1995 should be affirmed.