318 Pa. Superior Ct. 330 (1983)
464 A.2d 1368
K.L.H.
v.
G.D.H., Appellant.
Supreme Court of Pennsylvania.
Argued January 7, 1983.
Filed August 26, 1983.
*333 William G. Schwab, Lehighton, for appellant.
John F. Gibbons, Lehighton, for appellee.
Before SPAETH, BECK and JOHNSON, JJ.
JOHNSON, Judge:
This appeal arises from the trial court's award of custody of Brian and Darla H. to their mother K.L.H., pursuant to her Petition for Habeas Corpus. Appellant G.D.H., the natural father, has appealed. We affirm the order of the trial court.
The parties were married in January of 1964. Four children were born to this marriage: Paula, James, Brian and Darla.[1] The parties separated in March of 1976, with K.L.H. moving out of the family residence in Jim Thorpe, Pennsylvania and relocating to Dover, Delaware with Paula, Brian and Darla. James remained with his father. The parties were divorced in 1979, but no formal custody agreement or order was made. This custodial arrangement continued until the summer of 1981.
On June 13, 1981, Darla and Brian arrived for a two-week vacation with their father. In the course of the visit, the father determined from conversations with the children that they were being neglected and abused by their mother and her paramour, John Murphy, with whom she lived. The children told their father that they did not wish to return to their mother's home, and in fact refused to accompany her back to Delaware. They remained at their father's home in Jim Thorpe, where he lives with his wife, Debra, their infant son, Gregory, and his son born of his marriage to K.L.H., James.
*334 K.L.H. filed a Petition for Writ of Habeas Corpus on July 8, 1981. The court entered an interim custody order on August 5, 1981, giving custody to the mother. On August 7, the father filed a Petition for Plenary Jurisdiction to the Supreme Court of Pennsylvania, alleging that local rules of court which permitted an interim custody order to be issued were, inter alia, unconstitutional. The father also filed a Petition for Supersedeas to the trial court on August 10, which was denied. On August 20, 1981, the trial court confirmed the parties' stipulation permitting the father to take custody of the children and allowing visitation to the mother pending the final outcome of the mother's Habeas Corpus petition. After full and comprehensive hearings on August 28 and September 9, 1981, custody of both children was awarded to K.L.H., with visitation to G.D.H.
Appellant G.D.H. has raised two issues on appeal: (1) whether the local rules of court, permitting the trial court to issue an interim custody order prior to a full hearing, violate the provisions of 42 Pa.C.S.A. § 5345, and whether said local rules are unconstitutional and contrary to the best interests of the children, and (2) whether the trial court erred in determining the best interests of the children by failing to fully consider the stability, home environment, religious training and household members of the respective parental homes, to give adequate consideration to the children's preferences, and to obtain independent testimony concerning the respective living environments.
We need not address the first issue raised by appellant, as the stipulation entered on August 20, 1981, giving appellant interim custody of the children, rendered this issue moot. See Commonwealth ex rel. Watson v. Montone, 227 Pa.Super. 541, 323 A.2d 763 (1974) (existence of actual controversy is essential to appellate jurisdiction and if event occurs rendering it impossible for appellate court to grant any relief, issue is moot). As appellant received the relief he desired, namely interim custody of the children, there no longer exists an actual controversy.
*335 The primary concern in child custody cases is the best interests of the children, including the children's physical, intellectual, emotional, moral and spiritual well-being. Commonwealth ex rel. Holschuh v. Holland-Moritz, 448 Pa. 437, 292 A.2d 380 (1972); In re Custody of J.S.S., 298 Pa.Super. 428, 444 A.2d 1251 (1982). In a contest between parents, each party has the burden of proving that the best interests of the child will be served by awarding custody to him or her. In re Custody of J.S.S., supra; Beichner v. Beichner, 294 Pa.Super. 36, 439 A.2d 737 (1982).
It is clear that the scope of our review in custody cases is of the broadest type. Commonwealth ex rel. Pierce v. Pierce, 493 Pa. 292, 426 A.2d 555 (1981); Commonwealth ex rel. Newcomer v. King, 301 Pa.Super. 239, 447 A.2d 630 (1982). However, we cannot nullify or usurp the fact-finding function of the trial court, as the trial court is in a superior position to appraise the attitudes, sincerity, credibility and demeanor of the witnesses. Commonwealth ex rel. Montgomery v. Montgomery, 296 Pa.Super. 325, 442 A.2d 791 (1982), citing Commonwealth ex rel. E.H.T. v. R.E.T., 285 Pa.Super. 444, 427 A.2d 1370 (1981). Although we must defer to the trial court's findings of fact, we are not bound by the trial court's deductions and inferences. Commonwealth ex rel. Newcomer v. King, supra. Instead, we must exercise independent judgment based on the evidence and make such an order on the merits of the case as to do right and justice.[2]Id.
So as to facilitate this broad review, we consistently emphasize that the trial court must provide us with a complete record and a comprehensive opinion containing a thorough analysis of the record and specific reasons for the court's ultimate decision. In re Custody of J.S.S., supra; *336 Garrity v. Garrity, 268 Pa.Super. 217, 407 A.2d 1323 (1979).
The trial court, in its well-reasoned opinion, initially determined that the children's allegations of physical abuse by their mother and her paramour were unsupported. The court gave careful scrutiny to the issue and properly weighed the testimony of a clinical psychologist who had interviewed the children and their parents, as well as the other members in the parents' household. The court also interviewed the children in chambers on this matter. We agree that the record fails to support appellant's allegations of physical abuse of the children by their mother and her paramour.
On further evaluation, the trial court found both households adequate to meet the children's needs. Both were financially able to provide for their physical requirements. However, the court determined that the households had markedly different approaches to life and child rearing. The trial court found K.L.H.'s household to be structured around definite rules and regulations, with discipline meted out as necessary. Emphasis in the mother's home is placed on education and participation by the children in wholesome activities.
The court found the father's household less rigid and more free-spirited in its approach to child rearing and more liberal in imposing rules and regulations on the children.
As to spiritual development, neither parent has close ties with any church, nor attends church regularly.
The court appears to have placed the greatest emphasis on the continuous custody of the children with K.L.H. for the five years preceding the court's decision. It was determined that the status quo has been so beneficial to the children that this factor was given controlling weight. This decision was based upon the children's success in school, their many friends, their participation in numerous organized activities, their opportunity to travel and the fact that they were found to be bright, articulate, and well-adjusted.
*337 The children's preference to remain with their father was carefully considered by the court, but was determined not to be controlling, as it lacked a convincing basis. The children[3] stated that their preference was based on their greater freedom in their father's household and that there was more for them to do there.
The court further determined that the children's reactions, namely their desire to reside with their father and their claims of abuse, were based on their view of the situation in their mother's household; that K.L.H.'s paramour threatens their mother's love for them and their mother's continued efforts to minimize the children's contacts with their father threatens a loss of familial ties with their father. However, after analyzing the mother's nonmarital relationship, the court found that it has not adversely affected the well-being of the children. This was based on the permanence of the relationship, John Murphy's love for both K.L.H. and the children and his position in the household as a strong father figure. The court therefore determined that the children should not be uprooted, as such uprooting would be detrimental to them.
Although not condoning the mother's efforts to conceal these children from their father, the court held that the children would be best served by living in their mother's household. The court also noted that appellant's wife would not have the time and the energy to closely monitor these children and, at the same time, care for her own infant child. Therefore, the court awarded custody to K.L.H. and liberal visitation to G.D.H.
Initially, appellant argues that the trial court erred in basing its decision on the status quo and family dynamics. In support of his argument, appellant cites certain testimony which tended to undermine K.L.H.'s proof of her household's stability. We note initially that appellant's arguments appear to be based in part on questions of credibility. The law is clear that in custody cases, we must defer to the *338 court's findings of fact. Commonwealth ex rel. Newcomer v. King, supra.
We note that the continuous residence of children with one parent may be controlling in a custody dispute. Commonwealth ex rel. Oxenreider v. Oxenreider, 290 Pa. Super. 63, 434 A.2d 130 (1981). While it is true that the fact that a child has been away from a parent for a long period of time will not by itself defeat that parent's right to custody, Pamela J.K. v. Roger D.J., 277 Pa.Super. 579, 419 A.2d 1301 (1980), our independent review of the record reveals no error by the trial court in its determination that the best interests of these children will be served by maintaining custody with their mother.
Appellant also raises the non-marital relationship of K.L.H. and John Murphy and alleges that it is detrimental to the children. The only relevance a non-marital relationship has in a custody dispute is its effect on the children; if evidence shows that the parent's conduct does not adversely affect the children, then the best interests of the children may dictate that custody be given to that parent. In re Donna W., 284 Pa.Super. 338, 425 A.2d 1132 (1981). The trial court determined that this relationship was not harmful to the children and our review reveals the same result.
The trial court also determined that the uprooting of the children from the stability of custody with their mother would have a detrimental effect. The court based its decision on the more structured and disciplined household of the mother. The evidence indicates that the children desire to live with their father in part because of the greater freedom afforded them in his custody. We find adequate support in the record for the trial court's conclusion that the mother's household was more suitable for the proper development of the children.
Appellant next argues that the preferences of both children to live with their father was not given appropriate weight by the trial court. However, the court carefully considered the preferences of the children, but ultimately *339 determined that their preferences were not controlling for lack of a convincing basis. The law is clear that the expression by a child of a preference, though a factor to be considered, is not controlling. Commonwealth ex rel. Holschuh v. Holland-Moritz, supra. However, the weight accorded such preferences is to be determined by the trial court. Commonwealth ex rel. Grimes v. Grimes, 281 Pa.Super. 484, 422 A.2d 572 (1980). Our review confirms the trial court's determination that the children's preferences lacked a sufficient basis to be accorded controlling weight.
Appellant next argues that the court's determination that both home environments were adequate was based in part on an ex parte report of the Delaware Family Court, entered in the record over Appellant's objection. Appellant claims that reliance on this report was impermissible and violated his due process rights. In child custody proceedings, it is error to admit reports without affording the parties the opportunity to cross-examine the preparer as to its contents. Sandra L.H. v. Joseph M.H., 298 Pa.Super. 409, 444 A.2d 1241 (1982). However, no error occurred in the instant case, as the trial court stated on the record that it would consider the report only insofar as it described the mother's physical household. Appellant specifically did not object to that portion of the report. Also, the court stated that it would accept, as factual, those parts of the report that had already been testified to by witnesses. We find no error by the trial court in using this procedure. See Sandra L.H. v. Joseph M.H., supra.
Appellant also argues that the trial court incorrectly weighed the evidence concerning the children's caretakers. The law is clear that the fact that a parent must work may not deprive that parent of custody if suitable arrangements are made for the children's care in his or her absence. Jon M.W. v. Brenda K., 279 Pa.Super. 50, 420 A.2d 738 (1980). Upon a review of the evidence, we find that suitable arrangements exist in both households. Appellant's current spouse stays at home with their infant son. *340 Although both adults in the mother's household work, we find no difficulty with the mother's current arrangement, as the children are old enough[4] to care for themselves during the brief periods of time when no adults are available, i.e., after school. We therefore find no error.
We also find no merit in appellant's argument concerning religion. Religion is an important matter and should be given some consideration, but is not determinative of child custody. Commonwealth ex rel. Ackerman v. Ackerman, 204 Pa.Super. 403, 205 A.2d 49 (1964). Neither parent actively participates in any form of organized religion, although the evidence indicates that appellant's present wife is active and attends church. However, the evidence also indicates that both households concern themselves with some form of home teaching concerning religion and morality. We find neither party's evidence of religious training, or the lack of it, to be controlling in this case.
In all, we find upon an independent review of the record, that adequate evidence was presented to justify an award of custody to the mother in the instant case. Numerous witnesses testified, including a clinical psychologist who had interviewed both parties and the children, a caseworker for the Carbon County Office of Children and Youth Services, friends of the parties as well as both the children and the parties themselves. Various reports and recommendations were also made a part of the record.
Order affirmed.
SPAETH, J., files a dissenting opinion.
SPAETH, Judge, dissenting:
This case should be remanded for findings of fact.
I agree with the majority that in custody cases our scope of review is very broad. While we must defer to those of the lower court's findings of fact that are supported by the record, we are not bound either by the lower court's factual inferences or by its interpretation of the law. In re: Desiree *341 B., 304 Pa.Super. 461, 450 A.2d 1003 (1982); In re: Custody of Temos, 304 Pa.Super. 82, 450 A.2d 111 (1982). Where the record contains conflicting evidence relevant to those facts that bear on the best interests of the child, the lower court must enter findings as to these facts, for without such findings, it is impossible for us to fulfill our responsibility of determining whether the award of custody entered by the lower court indeed will advance the best interests of the child.[1] For example, in Kimmey v. Kimmey, 269 Pa.Super. 346, 409 A.2d 1178 (1979), the lower court awarded custody of two minor children to their mother, despite the testimony of five witnesses that the mother failed to care for or supervise her children and that "she never cleaned her house, her yard, her children, or their clothes [and] that she was not affectionate with the children, and had had several overnight visitors." 269 Pa.Super. at 359, 409 A.2d at 1184. The mother disputed this testimony. The lower court did not resolve this conflict in the testimony by making findings as to whether the incidents described by the five witnesses had in fact occurred. Because such findings were critical to a determination of whether the court's award of custody to the mother would advance the best interests of the child, we remanded the case with instructions that the lower court enter findings as to whether the disputed incidents had in fact occurred.
This case is very similar to Kimmey. Here, Brian Hydro testified as follows:
MR. SCHWAB: Brian, we've been through this before. I just want to cover some things we talked about in the past. You mentioned, when the Judge was questioning you, that you got hit by John. John is your mother's boyfriend?
BRIAN HYDRO: Yeah.
MR. SCHWAB: How long has he been living with you?

*342 BRIAN HYDRO:  around three years.
MR. SCHWAB: When you say you've been hit a lot, where have you been hit?
BRIAN HYDRO: He hit me on my arms and he grabbed me by my neck the one time.
MR. SCHWAB: Did you have any bruises, or anything?
BRIAN HYDRO: It was red for around a week.
MR. SCHWAB: When did this occur?
BRIAN HYDRO:  around five months ago.
MR. SCHWAB: That would have been around March?
BRIAN HYDRO: Yeah.
MR. SCHWAB: What did you do to deserve getting hit in the arms or the neck?
BRIAN HYDRO: Nothing. I was just cleaning up some games and I was going pretty slow because I was tired, and John grabbed me  and he threw me.
MR. SCHWAB: Was this usual that he would hit you or was it just once in a while?
BRIAN HYDRO:  when he'd get mad, he always did that.
MR. SCHWAB: How often did he get mad at you?
BRIAN HYDRO:  all the time.
MR. SCHWAB: Are we talking about once a week, once a month?
BRIAN HYDRO: Once a week he always gets made at us.
N.T. 64-66. John Murphy denied that the incident described by Brian had occurred. N.T. 271. Although there is some ambiguity in its opinion, I am unable to discern a finding of fact by the lower court as to whether the incident in fact occurred.
The lower court's opinion suggests that the reason for its failure to resolve the conflict between Brian's and John's testimony was its view that the incident described by Brian did not constitute physical abuse, so that even if it did occur, it would not weigh against an award of custody to *343 the mother: "Neither child indicated any abusive treatment by the mother or her live-in boyfriend, John Murphy. At worst, they stated that there was some corporal punishment inflicted on occasion; but certainly nothing which could be considered physically abusive." Slip op. at 4. I cannot agree that grabbing a child around the neck, throwing him, and inflicting red marks that last for a week did not constitute physical abuse. To the contrary, we have given comparable incidents great weight in determining whether to permit a natural mother to retain custody of her child. See In re: Davis, 237 Pa.Super. 516, 518, 352 A.2d 78, 79 (1975) (Mother's petition to obtain custody of her child denied where court found, inter alia, that her paramour "slapped the child often and on one occasion threw her up against the wall," made her eat on the floor, and "struck her in her ear with his fist . . . .").
Because the incident described by Brian did constitute physical abuse,[2] the question whether it in fact occurred is critical to a determination of whether an award of custody to the mother will advance the best interests of the children. If the lower court believed Brian's testimony, it should have accorded the incident great weight in determining whether to require the children to remain in their mother's custody. In addition, rather than according the children's preference "no weight," slip op. at 8, the court should have weighed their strong preference to remain with their father in his favor in light, first, of the fact that the desire to avoid physical abuse is certainly a legitimate reason for preferring to live with one parent instead of the other, see Shoup v. Shoup, 257 Pa.Super. 263, 390 A.2d 814 (1978), and second, of the court's express finding that Brian and Darla, who were then 13 and 11, respectively, were "mature and intelligent." Slip op. at 7. On the other hand, if the lower *344 court did not believe Brian's testimony, it quite properly refused to accord the incident any weight in analyzing the children's best interests.
In the absence of a finding by the lower court as to whether the incident described by Brian in fact occurred, we cannot fulfill our responsibility of determining whether the lower court's award of custody in favor of the mother will advance the children's best interests. Accordingly, the case should be remanded for a determination of whether the incident in fact occurred.[3] The parties should be permitted to introduce additional evidence relevant to the current status of the children. The court should file a comprehensive updated opinion in support of its award.
NOTES
[1] Custody of Paula and James was not disputed.
[2] We recognize that the issue of the proper scope of review applied in custody cases is presently before this court en banc in the case of In re Donna Williams, 674 Pittsburgh, 1981, argued May 10, 1983. However, the exercise of a different scope of review in this case would not affect the result.
[3] Brian H. was thirteen and Darla H. eleven years old at the time of the hearings.
[4] See footnote 3.
[1] If there is no conflict in the testimony, a remand for findings of fact is unnecessary. See Tomlinson v. Tomlinson, 248 Pa.Super. 196, 204, 374 A.2d 1386, 1390 (1977).
[2] This conclusion would follow even if an abuse of discretion standard of review were applicable in custody matters, for an inference from Brian's testimony that no physical abuse had occurred would be "manifestly unreasonable." Commonwealth ex rel. Berman v. Berman, 289 Pa.Super. 91, 93, 432 A.2d 1066, 1067 (1981) (quoting Mielcuszny v. Rosol, 317 Pa. 91, 93-94, 176 A. 236, 237 (1934)).
[3] A remand would be necessary even if an abuse of discretion standard of review were applicable, for we cannot determine whether the lower court properly exercised its discretion in the absence of a finding of fact on this critical issue. Cf. Bacchetta v. Bacchetta, 498 Pa. 227, 445 A.2d 1194 (1982) (In absence of findings of fact, analysis of those facts in light of the factors enumerated in the Divorce Code, and statement of reasons for order distributing parties' marital property and awarding or denying permanent alimony, reviewing court cannot determine whether lower court properly exercised its discretion).