485 A.2d 1166

**Dennis R. RINEHIMER, Appellant,**

v.

**Judith RINEHIMER.**

Superior Court of Pennsylvania.

Argued May 9, 1984.

Filed Dec. 12, 1984.

Martin J. Meyer, Kingston, for appellant.

Joyce A. Stack, Wilkes-Barre, for appellee.

Before WICKERSHAM, WIEAND and MONTEMURO, JJ.

WICKERSHAM, Judge:

Appellant, Dennis R. Rinehimer, appeals from a custody and visitation order entered in the Court of Common Pleas of Luzerne County.

Appellant is the father of two minor children, Shaun and Kevin Rinehimer. The boys are presently ages 3 and 2. At the time of appeal, appellant and Judith Rinehimer, Shaun's and Kevin's mother and appellee herein, were in the process of obtaining a divorce. Since the date of separation, shortly before the younger boy's birth, the boys have lived with their mother in the home of their maternal grandparents.

The parties entered into an agreement concerning custody and visitation, which was incorporated into an order on May 7, 1982. On December 13, 1982, appellant father filed a petition to modify that order. A master's hearing followed, resulting in two interim orders, dated January 19, 1983 and February 11, 1983, providing for partial custody for the father. The matter was scheduled for review and further hearings on May 3, 1983. On May 12, 1983, the

lower court issued its final order. Appellant father filed 19 exceptions to that order, several of which were allowed by the court, and the rest dismissed. Appellant filed this timely appeal to both the final custody-visitation order and the order dismissing his exceptions. The lower court has provided us with two very thorough opinions, one dated June 16, 1983 and the second dated August 30, 1983.

Appellant argues not with the grant of primary physical custody to the mother, but rather with the amount and periods of time he is given partial custody.

Specifically, appellant raises the following issues before us:

I. Whether the lower court erred in establishing a partial custody schedule which effectively prohibits the Father-Appellant from taking his minor sons to services at his church, thereby precluding him from exposing them to the formal practices of his religious faith, which differs from that of Mother-Appellee.

II. Whether the lower court erred or abused its discretion in failing to grant Father-Appellant periods of partial custody consistent with the evidence, particularly the recommendations of both expert witnesses who testified at the hearing.

III. Whether the lower court erred in restricting Father-Appellant to one seven day period of continuous partial custody/visitation for the entire year.

Brief for Appellant at 12.

■ Our scope of review in child custody cases was recently defined in *In re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984) (*en banc*). "The scope of our review is broad; we must accept the trial court's findings of fact, unless they are unsupported by the evidence, but on those facts we must make such order as our independent judgment persuades us right and justice dictate." *Id.*, 325 Pa.Superior Ct. at 42, 472 A.2d at 636. This broad scope of review does not nullify the long-established principle that the credibility of the witnesses and the weight to be given

their testimony can best be determined by the judge before whom they appeared. *Id.*[1]

The partial custody schedule established by the lower court basically provides that appellant has the right of partial custody of his sons every Wednesday evening from 5:00–8:00 p.m. and every Friday evening from 5:00 p.m. until Saturday at 8:00 p.m. The order also provides for a continuous week of partial custody every July, plus provisions for holidays and birthdays. Appellant argues that because his period of custody terminates on Saturday evenings at 8:00 p.m., he is precluded from taking his sons to services at his church on Sunday mornings, which in turn denies his right to expose them to the formal practices of his religious faith.[2]

■ It is well established that in all cases involving child custody, the paramount consideration is the best interests and welfare of the child. All other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being. *In re Davis,* 502 Pa. 110, 465 A.2d 614 (1983); *K.L.H. v. G.D.H.,* 318 Pa.Super. 330, 464 A.2d 1368 (1983); *Hall v. Mason,* 316 Pa.Super. 160, 462 A.2d 843 (1983); *Garrity v. Garrity,* 268 Pa.Super. 217, 407 A.2d 1323 (1979); *Trefsgar v. Trefsgar,* 261 Pa.Super. 1, 395 A.2d 273 (1978). Religion is an important matter and should be given some consideration in child custody matters, but it is not determinative. *K.L.H. v. G.D.H., supra; Commonwealth ex rel. Ackerman v. Ackerman,* 204 Pa. Super. 403, 205 A.2d 49 (1964); *see also Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 169 A.2d 69 (1961). In *Morris v. Morris,* 271 Pa.Super. 19, 412 A.2d 139 (1979), this court emphasized that "we neither intend to, nor are capa-

1. To the extent that our holding in *In re Donna W., supra,* and the Pennsylvania Supreme Court's ruling in *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984) conflict, we will, of course, follow the latter case. However, under either rendition of our standard of review, the results in the instant appeal would be the same.

2. Appellant is Lutheran, appellee is Roman Catholic.

ble of, rendering a value judgment on the intrinsic truth of the varied religious beliefs, but confine our investigation solely to any detrimental effect their practice may have on the development of the child." *Id.*, 271 Pa.Superior Ct. at 28, 412 A.2d at 144. Generally, where both parents demonstrate their desire to promote the religious education of the child, each in his or her own faith, the court shall assume a neutral stance as to the issue. *See Commonwealth ex rel. Ackerman v. Ackerman, supra.*

In the instant case, the lower court specifically found that no testimony whatsoever was presented that showed either religion involved—Roman Catholicism or Lutheranism—was harmful to Shaun or Kevin. (Lower ct. op., June 16, 1983 at 3). The record also supports the court's findings that: appellant goes to his church "when he can," but not on a regular basis; appellant did not attend services or practice his religion when he was living with appellee; appellee attends her services in her church every week and takes the boys with her; appellee's parish priest personally recalled their presence in church about three times per month; the boys were baptized Roman Catholics and had attended Catholic services with their mother all their lives; appellant's desire to take the boys to his church was a prospective desire and not a request to continue a beneficial practice with them; appellant had no objection to the boys being raised as Catholics until they were old enough to make up their own minds; appellant did not wish to change what appellee was doing in reference to religion; appellant only desired to be able to expose the boys to his own religious beliefs. The court also found that the issue of religious training and church attendance was not a prime motivation for either parent, but was exerted chiefly to gain leverage over the other in seeking custody, and that the young age of the children (then aged 1 and 2) made it doubtful that exposure to any religion would have a profound or lasting effect upon them.

■ Accepting these findings as binding,[3] we must decide whether the trial court correctly applied to these facts the pertinent principles of law. Upon careful consideration, we find that the lower court did so. The court scrupulously avoided any comment which would result in one parent's religious beliefs being favored over the other. The court placed no prohibition upon either parent against taking the children to services of his or her faith, discussing religious beliefs, or in any other way exposing the boys to their respective faiths. Granted, appellant is effectively prevented from taking his sons to Sunday morning services most of the year. But appellant himself stated that he agreed the boys should be raised as Catholics until they were older. We find that the partial custody schedule for the father was not designed to frustrate his religious viewpoint, but was designed solely in the best interests of the boys in establishing a stable schedule of partial custody.

Appellant also raises possible error in the failure of the lower court to grant periods of partial custody consistent with the recommendations of the experts. Basically, what appellant requested, and was denied, was two consecutive overnight periods of partial custody per week (i.e. both Friday *and* Saturday nights), rather than just one.

Both psychologists, Dr. Day and Dr. Sternlieb, recommended that the boys have a regular, predictable, and consistent relationship with the father. Neither doctor stated that appellant must be given partial custody of both boys for the entire weekend each and every week in order to develop that regular and consistent relationship. Dr. Sternlieb, appellant's expert, stated that appellant should have partial custody of the boys on a weekly basis, which would include a full 24 hour day. When asked whether or not it would be disadvantageous for the boys to visit with their

**3.** Our determination of whether the trial court's findings of fact are supported by the record is made more complicated because the trial court made no findings of fact as such, but delivered its decisions in narrative form. However, it is plain enough that the findings of fact implied in the court's narrative are supported by the record. *See In re Donna W.,* 325 Pa.Super. 39, 472 A.2d 635 (1984).

father the entire weekend, Dr. Sternlieb said it would not. The mother's expert, Dr. Day, noted that Shaun exhibited signs of separation anxiety from his mother.[4] She recommended only one overnight per week initially, and assuming that that schedule went well and the parents cooperated, possible future expansion of the visits.

The lower court was obligated to consider the testimony of the two experts, but was not obligated to delegate to these experts the responsibility of making its decision. E.g. *In re Jones*, 432 Pa. 44, 246 A.2d 356 (1968); *Brueckner v. City of Pittsburgh*, 368 Pa. 54, 84 A.2d 197 (1951). We find that the court carefully considered the testimony of both experts, and fashioned an order consistent with the recommendations of both experts that the boys needed a regular, predictable, and consistent visitation schedule. The court considered the extremely young age of the children, plus the fact that they had lived most of their young lives with their mother only. It was just prior to the first hearing in this case that appellant had any overnight custody at all, and then only with the older child. We also note, as did the lower court, that should two overnights every weekend be granted, appellee would be precluded from any weekend activities with her children.

Given the fact that the parents apparently cannot communicate about anything, let alone the mutual welfare of their children, and that the experts' opinions concerning future expansion of partial custody in the father was predicated upon the necessity that the parents would be able to communicate with each other and ease the transition for the children, we find no error in the court's denial of appellant's request for immediate expansion.

Finally, appellant complains of the lower court's failure to allow him an extended period of partial custody with his sons during the Christmas holiday season. The custody

4. Appellee's testimony showed that the children did not in fact adapt to the visitation schedule in question, as witnessed by Shaun's withdrawal and difficulty sleeping following overnight visits with his father.

order gives appellant, in addition to his weekly partial custody periods, partial custody during the second week of July of each year. On certain holidays, including Christmas Day, he is given partial custody from 1:00–7:00 p.m., and on other holidays, including New Year's Day, the parents are to alternate custody from 10:00 a.m.—7:00 p.m. Appellant's regular Wednesday evening and Friday night through Saturday night custody continues during the holiday season. However, appellant requests a complete week or so around Christmas because, due to the nature of his employment, he has a vacation during the Christmas season.

The lower court explained that it saw no need to extend partial custody during this period, as appellant has extensive weekly partial custody of his sons each and every week of the year. The court expected, however, that the parties could and should amicably arrange to extend the partial custody periods on their own around the holidays. We echo that expectation, although it seems unlikely given the continued animosity and lack of communication between the parties. We find no need to disturb the lower court's determination, however. Appellant's own expert noted that any contact between the boys and appellant for longer than the regularly scheduled visit would break up the regularity and consistency that both psychologists deemed important. He then went on to state that he considered it neither to their advantage nor to their disadvantage to be with their father for an extended period of time, although it was to their advantage to be with both their mother and father on major events such as birthdays and holidays. The record further notes that appellee opposed appellant's request for continual partial custody during the Christmas season because it is a special time for both parents and she also wanted to be with her sons for as much time as possible during the holidays. We find this to be a reasonable position. Again, given the young ages of the children, the need to maintain a regular, predictable schedule, and the amount of contact appellant already has with his sons over

the holidays, we see no reason to extend partial custody during the Christmas season.

We feel that the lower court established a schedule for partial custody which is consistent with the best interest and welfare of Shaun and Kevin, and which provides for a consistent and continuing relationship between appellant and his sons.

Order affirmed.

WIEAND, J., filed a concurring opinion.

WIEAND, Judge, concurring:

I agree with the majority that the custody order of the trial court should be affirmed. For reasons set forth in my Dissenting Opinion in *In re Donna W.*, 325 Pa.Super. 39, 472 A.2d 635 (1984), I disagree that this Court should make an independent determination in this custody case. The correct standard of review in child custody cases, as stated by the Supreme Court in *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984) and *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977), is abuse of discretion. It is because I find no abuse of discretion on the part of the learned trial judge that I concur in the majority's decision to affirm.