## Brownlee v. Fenical-Brownlee

C.P. of Berks County, no. 00-12703.

*Robin S. Levengood,* for plaintiff.
*Eugene C. LaManna,* for defendant.

LASH, *J.,* October 28, 2004—This court held a custody trial on October 26, 2004. At issue is the petition of defendant, Patrice Fenical-Brownlee (Mother), to modify the custody order entered August 31, 2001. The court makes the following findings of fact:

## I. FINDINGS OF FACT

(1) Plaintiff, Edward A. Brownlee (Father), is an adult individual residing at 302 Justa Road, Hamburg, Berks County, Pennsylvania.

(2) Defendant, Patrice Fenical-Brownlee, is an adult individual residing at 2096 Old Route 22, Lenhartsville, Berks County, Pennsylvania.

(3) The parties are the natural parents of a minor child, William R. Brownlee, born July 24, 1994.

(4) The parties were married on November 2, 1991, separated December 2000 and divorced by decree of the Berks County Court of Common Pleas on October 19, 2001.

(5) The parties and the minor child resided together in Ann Arbor, Michigan, from April of 1995 until June of 2000. The parties and the minor child relocated to Berks County in June of 2000, residing in the Shoemakersville and Hamburg area from June of 2000 until the parties separated in December of 2000.

(6) Since the date of separation, the minor child has resided with mother.

(7) Both parties reside in the Hamburg School District. From the time the minor child started school, the

minor child has always resided in the Hamburg School District. Currently, the minor child attends fifth grade at the Hamburg Elementary School and is doing well in school.

(8) Father is self-employed as a ceramic artist creating and producing ceramic pieces for display and sale at shows primarily in the East/Northeast United States. These shows take place approximately 24 weekends throughout the calendar year, most occurring from May until October.

(9) Mother is employed by the Lehigh Valley Hospital.

(10) Father resides alone.

(11) Mother resides with the minor child.

(12) Mother has a paramour, Edwin W. Bogert, who maintains a separate residence, but does sleep over at Mother's house on a continuing basis.

(13) The minor child's maternal grandmother, Carol Fenical, who resides on Old Route 22, Hamburg, Berks County, Pennsylvania, has a close relationship with the minor child and provides some daycare for the minor child.

(14) Father's immediate family lives primarily in the greater Pittsburgh area, including the paternal grandmother, Kathryn Bernard, and the minor child's aunt, Elinor Shank. The minor child enjoys a good relationship with the paternal grandmother, his aunt and his aunt's children, visiting with them on a regular basis.

(15) The Father has no family or employment ties with the Berks County area, but maintains a home here solely for the purpose of having contact with the minor child.

(16) The minor child's activities at school include playing the trumpet and being a hall monitor. He also has outside activities, including playing the guitar, fishing, playing with his dogs and general recreation.

(17) This action was originally commenced in December 2000 when Father filed a custody complaint.

(18) On January 3, 2001, this court entered a temporary order providing that Mother would have primary physical custody and Father would have partial custody on certain days, but not overnight.

(19) On August 31, 2001, the court entered a final order in which the parties would have joint legal custody of the minor child, Mother would have primary physical custody, Father would have partial physical custody during the school year on alternate weekends from Friday at 6 p.m. until Sunday at 6 p.m., then one week from Tuesday at 3:30 p.m. until Wednesday at 8 a.m., and the next week from Tuesday at 3:30 p.m. until Thursday at 8 a.m. The summers would be equally divided between the parties.

(20) On or about March 21, 2003, Mother filed an "emergency relief petition to modify custody order" alleging, among other things, that Father's home was uninhabitable and that Father did not provide adequate supervision of the minor child.

(21) By agreement of counsel, the court ordered on April 23, 2003, that the petition for emergency relief would become a petition to modify custody and would be processed under the standard procedures for custody matters.

(22) This matter proceeded to the custody master, who issued a report and recommendation. Exceptions were filed and the matter was then scheduled for trial.

(23) During the course of these proceedings, both parties have filed several petitions requesting, among other things, emergency relief, or to hold the other party in contempt of the existing court order.

(24) This court appointed Timothy E. Ring Ed.D. to prepare a psychological evaluation.

(25) Dr. Ring evaluated the parties and the minor child. He requested an evaluation of Edwin W. Bogert, but Edwin W. Bogert refused to appear for an interview.

(26) On July 20, 2004, Dr. Ring published his evaluations, which included the following recommendations:

(A) Both parties should share in the legal custody of the minor child;

(B) Mother is a more suitable candidate for primary physical custody;

(C) The present custody schedule appears to adequately meet the minor child's needs; and

(D) Both parents should be required to take four to six co-parenting sessions facilitated by a mental health professional who has experience in child custody matters. This is to help the parties develop a more effective means of communication or negotiation regarding their parenting of the minor child.

## II. DISCUSSION

The issue presented is whether Father's time with the minor child should be adjusted. Mother requests that Father's time be limited to alternate weekends and that his weekday schedule be eliminated. Father requests that his weekday schedule be expanded by one additional evening per week.

In making a determination, this court considered the testimony of the parties, Mother's paramour, Edwin W. Bogert, the in camera testimony of the minor child, the exhibits presented and the psychological evaluation compiled by Dr. Ring.

Mother has several concerns about Father's care of the minor child. She testified that some of his ceramic work is performed by him in his kitchen near the area where the minor child's food is prepared. She believes that Father uses chemicals which may be toxic or otherwise harmful to the minor child if the minor child or his food is exposed to the chemicals.

Secondly, Mother complains that Father does not take advantage of his scheduled time with the minor child, missing several appointments over the course of 2004. She explained that the minor child gets very frustrated and angry when Father fails to appear for his scheduled visits.

Third, Mother believes that Father is inattentive when the minor child is at Father's house. While Father focuses on his work, the minor child wanders around the neighborhood. Fourth, Mother believes that Father does not sufficiently participate in the minor child's activities.

Father provided an explanation for each of these concerns. Regarding the chemicals, he states that part of the process of creating the ceramics does involve certain chemicals, but these chemicals are nontoxic and totally safe. He does use the kitchen table for some of his work but the food is prepared on the other side of the kitchen and, in any event, he has no concerns regarding the process or the chemicals.

Secondly, he disputes that he is not available for the minor child. There are occasions when he is unavailable due to his employment, but this cannot be avoided. He needs to make a living and in his type of work, he has to be available to travel to shows to sell his wares. Further, he argues that Mother has refused him access to the minor child on numerous occasions when it suited her fancy.

Third, he believes that he is very attentive with the minor child, helping with his school work and with activities. He believes that Mother has moved to curtail activities, including baseball. The minor child was on a baseball team, coached by Father. Father would always have the minor child available when he had custody of the minor child, but Mother would fail to bring the minor child to practice or games when she had custody.

Father also expressed some concerns about Mother's conduct. He believes that Mother is attempting to phase him out of a relationship with the minor child. She denies him access to the minor child at every opportunity, even to the extent of violating the court order. As stated, she kept the minor child from attending baseball games and practices when scheduled. She files emergency petitions with no merit.

He also had some concerns about her household. There is some indication that Mother may abuse alcohol. She had an accident recently and was charged with driving under the influence of alcohol. That case is pending. Father also believes that her paramour has a drinking problem and that the minor child is scared of the paramour when he is drinking.

Mother denies that she is doing anything to alienate the minor child's affections for his father. She also de-

nies that the accident was DUI related or that she or her paramour have any problems with alcohol.

The paramount concern in a child custody proceeding is the best interests of the child. *Costello v. Costello,* 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). A determination of what is in the best interests of a child is made on a case-by-case basis and must be premised upon consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being. *Alfred v. Braxton,* 442 Pa. Super. 381, 385, 659 A.2d 1040, 1042 (1995).

This court believes that both parents have a great deal of love and affection for the minor child and are willing to invest their time and energy for the best interests of the minor child.

Mother's bond with the minor child appears to be better than Father's. For one, the minor child may have some residual anger with Father based on the separation or because Father is unavailable due to his work schedule. This concern was presented through a set of drawings created by the minor child which express hostility toward Father. This court discussed the drawings with Dr. Ring, who believed that the drawings were an impulse reaction of the minor child at a time when the minor child became upset with Father over a particular incident and does not reflect a long-standing bitterness or enmity. Nevertheless, according to Mother, the minor child is frustrated by Father's absences or inattentiveness.

It may be that the minor child's frustration with Father is partly based on the minor child's unrealistic expectations, due to some extent on Mother's method of dealing with the issue. For one, Mother appears to dote

on the minor child. Her involvement with the minor child when he is not in school is quite extensive. Father, on the other hand, is unable to provide this level of commitment, due to his need to earn a living. Father's unavailability manifests itself in both the weekly time he has with the minor child and when he travels with the minor child to his shows. If the show is in the Pittsburgh area, Father makes it a habit to visit with his family. This may result in the minor child being watched by Father's family while Father goes to his shows. While both parties believe the minor child enjoys his time with Father's family, nevertheless, Father's absence is felt by the minor child. Mother may also stir up the minor child's emotions by reminding him of Father's absences, implying that Father does not wish to be as involved with the minor child as she is.

The law is clear that the fact that a parent must work may not deprive a parent of custody if suitable arrangements are made for the child's care in his or her absence. *K.L.H. v. G.D.H.,* 318 Pa. Super. 330, 464 A.2d 1368 (1983).

It appears that Mother's concerns are overblown. While Father's involvement with the minor child is certainly not as extensive as Mother's, it does appear appropriate and adequate. If Mother's goal is, as Father believes, to phase him out, then her agenda is improper. If her goal is to punish Father for being less invested in the minor child than she, by removing time from him, then her method is counterproductive, for the minor child having less time with Father would likely result in the bond between the two becoming weaker, not stronger. In *Fatemi v. Fatemi,* 339 Pa. Super. 590, 489 A.2d 798 (1985), the Superior

Court cautioned that a court must sparingly impose restrictions on the relationship between parent and child and must furthermore impose the least intrusive restriction reasonably necessary to assure the child's welfare.

The household of Father also appears to be appropriate. There is no evidence that Father is exposing the minor child to unsafe chemicals. Without testimony of a chemist or someone with expert understanding of the nature of Father's business, Mother's presentation is nothing more than mere allegation. Father's testimony adequately explained his knowledge of the industry, the chemicals he uses, and his complete satisfaction that he is not putting the minor child in harm's way. Further, Father's belief that Mother is often in contact with Children and Youth Services is more a reflection of Mother's agenda than it is of Father exposing a minor child to a dangerous environment.

There are also credibility issues regarding Mother. Her denial of any alcohol use, particularly in conjunction with being arrested for driving under the influence, is not credible. In his evaluation, Dr. Ring commented on her attempts to obstruct portions of his evaluation process, of being possibly deceptive in her answers and on the minor child being coached in his responses.

For all the aforesaid reasons, it does not appear appropriate to restrict Father's time with the minor child any further than is already restricted by the terms of the current order.

That being said, this court is not inclined to expand Father's time with the minor child either. If Father has difficulty being available for all of his scheduled time with the minor child under the current order, it is likely

that he will be less available for any additional time. Further, if his time is increased, and if Father is unavailable for some of his scheduled times, the increase could confuse and frustrate the minor child even further.

Secondly, Father has not presented any evidence which would warrant an increase in his time. The minor child is doing well in Mother's care. While Father and this court may have some issue with Mother's method and conduct, the problem is not remedied by reducing her time with the minor child, as this could have an adverse effect on the minor child and serve no positive purpose. A better remedy is for this court to require strict compliance with the terms of the order. If Mother fails to comply, she can be fined or required to pay Father's attorney's fees, and Father could receive temporary make-up time with the minor child. Courts are reluctant to disturb existing custody arrangements which have satisfactorily served the best interests of the child. *Wiseman v. Wahl,* 718 A.2d 844 (Pa. Super. 1998).

It would be in the best interests of this minor child if both parties would move on with their lives, give up the bickering, and respect each other's method of rearing the minor child. The minor child's maturity, emotional and psychological well-being would be served if Mother would support Father instead of attacking him and attempting to control and manipulate all circumstances involving the minor child. Father, for his part, has to make every effort to focus on his involvement with the minor child, for this minor child has a hunger for a strong relationship with him. When he is distracted by his employment, he appears detached and the minor child feels he is less important to Father than a particular bowl or jar that Father happens to be working on at the time.

Accordingly, we enter the following order:

## ORDER

And now, October 28, 2004, after custody trial held, the petition of Patrice Fenical-Brownlee to modify the custody order of August 31, 2001, is denied. The order of August 31, 2001, shall remain in full force and effect.

Upon recommendation of Timothy E. Ring Ed.D., both parents shall participate in four to six co-parenting sessions facilitated by a mental health professional. The counselor shall be agreed to by the parties, or upon failure to agree, appointed by the court on motion of either party. The parties shall share the cost of the sessions on a 50/50 basis.