J-S10001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.G. | : | No. 1755 MDA 2019 |

Appeal from the Order Entered September 25, 2019
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s):  2018-41675

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED: APRIL 20, 2020**

J.L. ("Mother") appeals from the order entered in the Court of Common Pleas of Lackawanna County, dismissing Mother's petition for primary custody, and reaffirming an agreed custody order dated May 28, 2019, which awarded Mother and J.G. ("Father") shared legal custody of the parties' son, E.G. (born May 2015) ("Child"), Father primary physical custody, and Mother partial physical custody.  We affirm.

The trial court set forth the following factual and procedural history of this matter:

> This case involves a custody dispute between [Mother and Father], over their minor child, E.G. (hereinafter "E.G.").  By way of background, this action commenced with the filing of Mother's Petition for Custody on November 27, 2018.  The parties attended a conciliation conference before the Custody Master, (hereinafter "Master"), on January 29, 2019.  At that time, the parties reached an agreement and the Master issued an Order dated February 7, 2019 granting the parties shared legal custody, Father primary

physical custody and Mother partial physical custody on weekends. The matter was scheduled for a review hearing before the Master on May 28, 2019. During the May review hearing, the parties reached an agreement to modify the custody Order to extend Mother's periods of partial physical custody to include Wednesday evenings. Pursuant to the Order, the parties have shared legal custody of E.G. Father has primary physical custody, and Mother has partial physical custody every weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., and every Wednesday from 5:00 p.m. until 8:00 p.m.

Then, less than a month later, Mother filed a Motion for a Primary Custody Hearing on her underlying Petition for Custody that was filed on November 27, 2018. In Mother's Petition for Custody, she alleged that Father was preventing her from seeing E.G. However, in Mother's Motion for Primary Custody Hearing, she avers that the best interests of E.G. would be served by awarding her sole or primary physical custody and legal custody because Father's mental health issues prevent him from caring properly for E.G., that she is better able to provide adequate childcare, and better equipped to attend to the daily physical, emotional, and developmental needs of E.G. A hearing commenced before this [j]urist on September 25, 2019. . . .

Trial Court Opinion, 11/15/19, at 1-2 (citations to the record omitted).

At the hearing, four witnesses testified: Mother; Father; A.P., Father's best friend; and A.C., Father's brother's girlfriend. Mother testified that she works full-time as a department manager at a retail store. *See* N.T., 9/25/19, at 4-5. Mother further testified that Child is in Head Start and, if awarded custody, Mother planned to enroll Child in daycare or school. *See id.* at 6, 8. Mother also described her normal routine with Child and their free time at the park and visiting Mother's niece and nephews. *See id.* at 5-6. Mother explained that her sisters and mother live in the area and that Child sees them often. *See id.* at 6-7. Mother's family also includes her daughter, although

she does not live with Mother. *See id.* at 7, 11. Mother blamed the situation with her daughter on unfounded allegations of abuse leveled by her daughter's father against Father. *See id.* at 11-12.

Mother also testified to conflict between herself and Father, which Mother blamed on Father's anger related to his bipolar disorder. *See id.* at 8-9. Mother asserted that Father swears at her and "freaks out on me." *See id.* Mother claimed that she should be awarded primary physical custody because she keeps a "close eye" on Child and has better parenting skills than Father. *See id.* at 10. If awarded primary physical custody, Mother testified she would encourage contact between Child and Father "[b]y letting them video chat or even call and talk to each other on the phone." *See id.* at 5. Upon inquiry by the court, Mother explained that she agreed to the prior order granting Father primary physical custody because she "was in the middle of getting my life straightened out. . . ." *See id.* at 10-11.

Father testified that he does not work and collects disability due to his schizophrenia and bipolar disorder.[1] *See id.* at 18, 20-21. Father asserted that he was in counseling and began collecting disability after his release from prison, noting that he pled guilty to crimes arising out of a robbery he committed in November 2014. *See id.* at 21. Father claimed that his criminal

---

[1] A.P. and A.C. testified that Father has a good relationship with Child and provides him with a loving and appropriate home environment. *See* N.T., 9/25/19, at 13-14, 16-17. Both denied any issues with Father's mental health. *See id.* at 14-15, 17.

activity resulted from his inability to receive medical care for his mental health issues. *See id.* at 21-22. Father described Child's daily routine at his house and further testified that, on weekends, Father and Child engage in activities like going to the movies before Mother retrieves Child for her custody time. *See id.* at 19. Father further testified that he helps Child with his homework. *See id.* at 20.

Father asserted that his relationship with Child helped Father's mental health and kept him out of trouble. *See id.* at 24. He also asserted that he was taking medication to treat his mental health conditions, although he could not recall the names of the medication. *See id.* Father acknowledged a difficult relationship with Mother, claiming that Mother believed he was too strict with Child. *See id.* at 23-24. Father conceded that he used harsh language with Mother, but claimed that he did so because she was unresponsive. *See id.* at 24-25. Father also expressed concerns with Mother's failure to accept additional time with Child when he offered it to her. *See id.* at 25-27. Despite the issues between Father and Mother, Father testified that he understood it was important for Child to stay in touch with Mother. *See id.* at 27.

At the conclusion of the hearing, the trial court stated:

THE COURT: I'm going to leave the custody the way it is. I think that it's a generous Custody Order with mom gets the child every weekend. And due to her work schedule and dad's not, you can pick him up at 3:00 at school, rather than him going in to the daycare for that period of time until mom gets out of work.

- 4 -

I think that all the factors are covered. And I do believe that - I believe that [Father] will ensure that his son has a relationship with his mother, as was evidenced by the fact that he tried to get her to go to see the child at Bee's Backyard. And that's it.

N.T., 9/25/19, at 27-28.

Thereafter, the trial court entered an order dismissing Mother's petition for primary custody on September 25, 2019.[2] On October 22, 2019, Mother filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On appeal, Mother raises the following issues for our review.

> 1. Whether the trial court erred in law and/or abused its discretion in dismissing the [Mother's] Custody Complaint.
>
> 2. Whether the trial court erred in law and/or abused its discretion in considering the [Mother's] work schedule as a basis for awarding custody.

Mother's Brief at 4 (trial court answers omitted).[3]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. § 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

---

[2] We note the trial court did not explicitly set forth the reasons for its decision until it filed its opinion after Mother had filed her notice of appeal. Mother does not directly challenge the legality of this chronology and we conclude she suffered no prejudice from it. However, we remind the trial court that it must provide its analysis at the time it issues its custody order. *See M.P. v. M.P.*, 54 A.3d 950, 955-56 (Pa. Super. 2012).

[3] Father, who acted *pro se* in the trial court, has not filed a brief on appeal.

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We do not disturb the judgment of the trial court lightly:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

We have further explained the concept of an abuse of discretion:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338.

Upon petition, a trial court may modify a custody order if it serves the best interests of the child. ***See*** 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. ***See E.D. v. M.P.***, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows.

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).
> (3) The parental duties performed by each party on behalf of the child.
> (4) The need for stability and continuity in the child's education, family life and community life.
> (5) The availability of extended family.
> (6) The child's sibling relationships.
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
(11) The proximity of the residences of the parties.
(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a party's household.
(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

We have delineated the trial court's duties when addressing a petition

to modify custody:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." . . . .
In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014) (citations omitted).

Here, the trial court evaluated the Section 5328(a) factors as follows:

This [c]ourt considered all relevant factors which will be discussed in turn. Considering the first factor, the testimony on record shows that both parents are willing to allow continued contact between E.G. and the out-of-custody parent. However, Father stated his desire is that E.G. be able to spend time with Mother in person, even testifying that Mother's failure to take advantage of time with E.G has been a source of conflict between the parties. In the time Father has enjoyed primary physical custody of E.G., he has demonstrated a willingness to encourage and permit frequent and continuing contact with Mother, and he has made it clear to this [c]ourt that he has no problem making sure that E.G. stays in contact with Mother. On the other hand, Mother's testimony demonstrated an unwillingness to promote contact between E.G. and Father. Mother indicated that she would only be willing to allow video chats and phone calls. Therefore, this factor weighs in favor Father.

The second factor for consideration was not afforded great weight by this [c]ourt. During the hearing, Mother was questioned as to why her daughter does not live with her. In her response, she indicated that her daughter did not live with her because of allegations of abuse that were made by her daughter's father against Father when the parties were together. Further, she stated those allegations were false. This [c]ourt was not presented with any supporting evidence of such allegations[,] nor did the parties present any other evidence in support of this factor. Therefore, this [c]ourt finds this factor weighs in favor of neither party.

The third and tenth factors are considered here. Father has been the primary custodian of E.G. and testified to his daily schedule while in Father's custody, which this [c]ourt finds speaks to an attentiveness to E.G.'s needs. Specifically, Father testified that he ensures E.G. attends the Head Start program daily and is available to assist E.G. with any homework assignments. E.G. has been attending the Head Start program for over a year and Father expressed a desire to continue such. Mother indicated that she attends to E.G.['s] basic needs during her periods of custody. However, she failed to present a specific education plan for the minor child besides that she would enroll him in a daycare or

school as a means for childcare. Therefore, this [c]ourt finds these factors weigh in favor of Father.

Fourth, as discussed above, Father has been the primary custodian of E.G. for at least the past year and in that time has developed an educational and daily routine for E.G. Further, this [c]ourt has expressed great concerns with E.G. having stability in his life. The current custody Order was agreed upon only a month prior to Mother's request to modify it yet again. Such agreed upon Order was as a result of what was in the best interest of the minor child considering the parties' schedules. Pursuant to the current Order, E.G. is able to spend consistent and quality time with Father during the weekdays and Mother during the weekends. Therefore, this [c]ourt finds this factor weighs in favor of Father.

Regarding the fifth and sixth factors, Mother testified that E.G. spends time with her extended family, Maternal Grandmother, Maternal Aunt and Maternal Cousins, during her periods of custody. Mother also testified that E.G. enjoys a normal and loving sibling relationship with his sister during her periods of custody. Although Father testified that E.G. has a relationship with his fiancée's minor children, such relationship does not compare to [] E.G.['s] relationship with Mother's family. Thus, these factors weigh in favor of Mother.

The seventh factor is not applicable as E.G. is only four (4) years old and thus, cannot give a preference. Therefore, this factor is not relevant. Additionally, factor eight is not applicable as E.G. has not reached an age that a parent would be able to make any attempt to turn the child against the other parent. Further, there was no evidence presented in regards to this factor. Thus, this factor is also not relevant.

Considering the ninth factor, Father testified as to Mother's lack of consistently maintain[ing] a loving, stable, and nurturing relationship with E.G. Specifically, Father testified that E.G. wanted to see Mother so Father contacted Mother in [an] attempt for her to visit with E.G. However, Father testified that, "She (Mother) decided to tell me that she had other things to do." Further, Father indicated that, "I (Father) got tired of telling her to spend more time with her son." Mother failed to provide any credible testimony regarding Father's lack of consistently maintaining a loving, stable, and nurturing relationship with E.G. Therefore, this [c]ourt finds this factor weighs in favor of Father.

- 10 -

The eleventh factor is not relevant in this case. Mother testified that she resides fifteen (15) minutes from Father's residence. Further, there was no testimony presented regarding any concerns with the proximity of the residence of [the] parties.

As for the twelfth factor, Father testified that he is available all day to care for [] E.G. and would make appropriate childcare arrangements if necessary. Mother testified that, although she works full time, she would be able to make arrangements for childcare for E.G. during her periods of custody. Mother went on to testify that there is a daycare across the street from her employment as well as down the street from her residence. Therefore, this [c]ourt finds this factor weighs in favor of neither party.

There was evidence presented that there is some conflict between the parties. Father testified that, "I (Father) have very difficult issues with her. And, mainly, it has to do with my son." As noted above, Father has admitted to becoming frustrated with Mother and losing his temper on the occasion when she did not come to see E.G. However, the evidence presented does not give rise to the presumption that either party would be unwilling to cooperate with the other in raising E.G. Therefore, this [c]ourt finds this factor weighs in favor of neither party.

Neither party presented any evidence of a history of drug or alcohol abuse of a party or member of [the] party's household. Thus, the fourteenth factor is not relevant.

This [c]ourt heard testimony that Father suffers from bipolar disorder and schizophrenia. Further, Father's mental state was a primary concern for Mother in filing her Motion for Primary Custody. However, Father testified that he is compliant with his mental health treatment. Specifically, Father indicated that he is currently on medication and receiving therapy. Mother did not present any evidence that would suggest that Father is in any way impaired in his ability to care for his son, nor has she provided any instances where E.G. has been harmed or endangered due to Father suffering from mental illnesses. Therefore, this [c]ourt finds this factor weighs in favor of neither party.

Trial Court Opinion, 11/15/19, at 4-7 (citations to the record omitted).

We address Mother's issues together as they are interrelated. In her first issue, Mother contends, "the trial court erred in giving appropriate weight to the factors enumerated in the Custody Act." *See* Mother's Brief at 10. Mother argues that the trial court should have concluded that factors 1, 2.1,[4] 3, 5, 7, 8, 9, 11, and 14 were either neutral or inapplicable. *See id.* at 10-13. Further, Mother asserts that factors 2, 4, 6, 12, 13, and 15 should have favored her.[5] *See id.*

Beyond a cursory evaluation of many of the factors, Mother focuses on her contention that Father has a strained relationship with Mother and a history of mental health issues and criminal conduct. *See id.* Further, in her second issue, Mother asserts that the trial court improperly considered Mother's work schedule as a determinative factor in awarding Father primary physical custody. *See id.* at 15. Mother argues that she can provide appropriate childcare, as contemplated by Section 5328(a)(12), and that this factor should have favored her as she could place Child in daycare where Child would "likely have some level of education[.]" *See id.* at 12. Based on her

_____

[4] Although the trial court did not specifically consider this factor, no testimony suggested credible allegations of child abuse or the involvement of child protective services.

[5] Mother addresses nearly every factor, despite the fact that the trial court agreed with Mother's analysis for several of the custody best interest factors. Further, with respect to factor five, the availability of extended family, Mother contends this factor is neutral despite the trial court finding it favored Mother. *See* Mother's Brief at 11.

evaluation of the custody best interest factors, Mother concludes that she should be awarded primary physical custody or, in the alternative, that, because both parties are "fit," "shared physical custody is desired." *See id.* at 13-14 (citing *In re Wesley K.*, 445 A2d 1243 (Pa. Super. 1982)).

In addition to setting forth its analysis of the custody best interest factors, the trial court addressed Mother's assertion that it improperly considered Mother's work schedule as follows:

> It is true that "a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence." *K.L.H. v. G.D.H.*, 464 A.2d 1368, 1374 (Pa. Super. 1983). However, although this [c]ourt considered Mother's work schedule, it was not a determinative factor in ruling that Father shall maintain primary physical custody of E.G. Consideration of a party's schedule is necessary in order for this [c]ourt to determine not only whether suitable arrangements can be made for the child when the parent is unavailable during their periods of custody, but also to take into account several other factors. . . .

Trial Court Opinion, 11/15/19, at 8.

Here, the trial court comprehensively considered the Section 5328(a) factors, focusing on Father's support of Child's education and Child's contact with Mother, as well as Child's daily routine in Father's home. *See id.* at 4-6. The court noted the conflict between the parties, but concluded that the evidence did not demonstrate that either party would be unwilling to cooperate with the other in raising Child. *See id.* at 7. Further, the court discounted Father's mental health issues as Father testified that he is compliant with his mental health treatment, and noted that Mother did not

present evidence to establish that Father's mental health issues compromised his ability to care for Child. *See id.* Moreover, the trial court appropriately considered Mother's ability to care for Child or make appropriate childcare arrangements pursuant to Section 5328(a)(12). Although the court referenced Mother's work schedule in its on-the-record statement, the court's opinion makes it clear that it did not find this factor determinative. Instead, the court concluded that this factor favored neither party. *See id.*

While Mother invites us to reweigh and reconsider the evidence presented at trial, we find competent evidence of record to support the findings of the trial court. *See C.R.F. v. S.E.F.*, 45 A.3d at 443. The trial court considered the evidence and determined that Child's best interests are served by awarding Father primary physical custody. As we are bound by the trial court's credibility and weight assessments regarding the evidence, and the trial court's conclusions are not unreasonable, we will not disturb the trial court's decision to award primary physical custody to Father. Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/20/2020

- 14 -