J-A28045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| S.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| J.C., | |
| Appellee | No. 1427 EDA 2014 |

Appeal from the Order entered April 2, 2014,
in the Court of Common Pleas of Bucks County,
Domestic Relations, at No(s): A06-07-60959-C

BEFORE:  GANTMAN, P.J., WECHT, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED MARCH 10, 2015**

J.C. ("Mother") appeals from the order of the trial court entered on April 2, 2014, granting S.C.'s ("Father") petition for primary custody of their three minor children, H.C. (a male born in March of 1998), D.C. (a male born in February of 2000), and J.C. (a female born in July of 2002) (collectively, the "Children").  The order awarded Father primary physical custody commencing after the current school year ends in June of 2014, and directed that Mother shall have partial physical custody every other weekend, and five weeks of custody during the summer.  We affirm.

This Court previously set forth the following factual background and procedural history of this case in reviewing a prior appeal, as follows.

> . . . [Mother] and Father were married for seven years and were divorced in 2004.  Agreements of the parties concerning

the divorce and the custody of the children were entered as court orders in Montgomery County, Pennsylvania.

Following the divorce, Mother moved with the Children to Warminster, Bucks County, Pennsylvania, and Father purchased a home in Coatesville, Chester County, Pennsylvania. In April 2008, Father filed a petition for modification of the custody order in Montgomery County, seeking primary custody of the Children. Following the transfer of the action to Bucks County, a custody conference was held on September 17, 2009. The trial court held hearings on November 10, and December 19, 2009, and on February 4, March 10, July 1, and August 11, 2010. The trial court entered an order on August 11, 2010, denying Father's petition to modify custody of the Children. Mother retained primary physical custody of the Children, and Father retained partial physical custody.

*S.J.C. v. J.J.C.*, 2576 EDA 2010 (filed April 25, 2011) (unpublished memorandum). Father filed a timely notice of appeal on September 10, 2010. This Court affirmed the trial court's August 11, 2010 order on April 25, 2011.[1]

On October 18, 2012, Father filed a petition for modification of custody, seeking primary physical custody of the Children. On September 11, 2013, November 13, 2013, and April 2, 2014, the trial court conducted hearings on Father's petition for modification.

At the hearing on September 11, 2013, Father presented the testimony of his current wife, A.C., ("Stepmother"), and testified on his own behalf. On November 13, 2013, Father completed his own testimony. Mother also testified on her own behalf. Finally, Father presented the

---

[1] The trial court entered its copy of this Court's Memorandum decision on its docket on June 24, 2011.

testimony of Diana Rosenstein, Ph.D., as an expert in psychology who conducted an evaluation of the family. The trial court admitted Dr. Rosenstein's expert report into evidence as Exhibit M-3. N.T., 11/13/13, at 79-80.

At the hearing on April 2, 2014, Mother testified on her own behalf. Mother also presented the testimony of her father, D.A. Father presented the testimony of Stepmother, and testified on his own behalf. The trial court then heard the testimony of the three children, *in camera*, with counsel for the parties present and questioning the children.

The trial court set forth its factual findings in the May 19, 2014 opinion, which we incorporate herein. Importantly, the trial court found that, in August of 2012, H.C. moved to live with Father and Stepmother in Father's home in Royersford, Montgomery County, Pennsylvania, pursuant to an agreement between Mother and Father. Trial Court Opinion, 5/19/14, at 3. Moreover, the trial court found that Mother testified that she voluntarily transferred physical custody of H.C. to Father in August of 2012 because of H.C.'s aberrant and bizarre behavior. *Id.* at 5.

The trial court found that, under the agreement, Father has primary physical custody of H.C., as Mother voluntarily relinquished custody of H.C., and Father and Mother have physical custody of the two younger children, D.C. and J.C. on alternate weekends, so Father has physical custody of all three children on alternate weekends. *Id.* at 4-5. Father testified that,

although he currently resided in Royersford, he was moving the family into a larger, four-bedroom home in Coatesville, Chester County, Pennsylvania. *Id.* at 4. Father also testified that Mother's home in Warminster was approximately fifty-one miles from his home in Coatesville. *Id.* at 4. Additionally, Father testified that he has a two-year-old son with A.C., who lives with Father and A.C. *Id.* at 5. Moreover, Mother testified that her entire family, with the exception of one sister, lives near her home in Warminster. *Id.*

On April 2, 2014, the trial court entered its order, in court, on a transcribed record spanning 25 pages. The trial court awarded Father primary physical custody of the Children commencing after the end of the school year in June of 2014, and directed that Mother shall have partial physical custody, in accordance with a schedule that would differ in the summers of 2014 and 2015.

On April 22, 2014, Mother filed a petition for reconsideration of the custody order. On April 28, 2014, the trial court denied the petition for reconsideration. On April 30, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother filed a petition to proceed *in forma pauperis* on that same date. The trial court granted the petition on May 6, 2014. The trial court explained that, because of the *in forma pauperis* designation, and because the matter was designated as a Children's Fast

- 4 -

J-A28045-14

Track appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i), it filed its opinion on May 19, 2014, without the benefit of the notes of testimony. *See* Opinion, 5/19/14, at 2.[2]

On appeal, Mother raises four issues, as follows:

I. Whether the Trial Court committed an error of law and/or abused its discretion by ignoring the finding and opinions of the mutually agreed upon expert?

II. Whether the Trial Court committed an error of law and/or abused its discretion by not more fully probing the impact that this custody order will have on the two younger children by such a drastic change in custody?

III. Whether the Trial Court committed an error of law and/or abused its discretion by failing to characterize this custody order change as a relocation subject to certain procedural requirements under Pennsylvania law[?]

IV. Whether the Trial Court committed an error of law and/or abused its discretion by failing to provide for the usual summer share of custody for the summer of 2014, particularly given the testimony of the two older children and their pending employment[?]

Mother's Brief, at 4.

Initially, we observe that, as the custody trial in this matter was held on September 11, 2013, November 13, 2013, and April 2, 2014, the Child

_____

[2] We note that this Court recently held, in ***R.L.P. v. R.F.M.***, 2015 PA Super 29, 2015 Pa. Super. LEXIS 43 (Pa. Super. 2015), that, to be sufficiently specific to be enforced, an order of custody must be entered as a separate written order, or as a separate section of a written opinion. "If [a custody order] is entered as a separate section of an opinion, it must be designated as such by the use of the heading entitled 'Order'. A custody order may not be entered as a transcript of any trial or hearing." Although the order is set forth on a transcript rather than in a separate written order, as the trial court entered its order and opinion in this matter before this Court entered the opinion in ***R.L.P.***, we will review the appeal.

- 5 -

Custody Act, ("the Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. ***C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Id.*** at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting* ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In ***M.A.T. v. G.S.T.***, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the following regarding an abuse of discretion standard.

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act, 23 Pa.C.S.A. § 5328(a), sets forth the best interest factors that the trial court must consider. *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

- 7 -

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5328(a) of the Act provides as follows.

## § 5328. Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where

reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.[3]

In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained

the following:

---

[3] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).  Although applicable at the time of the custody trial on April 2, 2014, there was no evidence that would have required the trial court's consideration of this factor.

"***All*** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D.***, ***supra*** at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, ___ Pa. ___, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-23.

With regard to the section 5328(a) factors, the trial court found the following.

This is a close case, again. It hasn't changed at all. I have to do what's right for these three children. Now, there are so many factors involved I could snap my fingers and enter an Order today, but that doesn't consider the realities of the present moment. I will never, absent extraordinary circumstances of abuse and neglect, take a child out of school in midstream and send them to live with the other parent. I won't do it today. The time is not ripe, but at the end of the school year it will be. And Ms. Murphy [Father's counsel] makes a very strong argument. These kids have been through a lot during this

dispute. In April of 2014, I don't want them to move. But in June, they will.

How could we insure that a change of custody will continue the relationship with Mother? We insure that by giving, as we did to Father, the same considerations to her custody time. That is to liberalize, as much as we can, consistent with their schedules and that of the children, their time with Mother.

I am required to consider 16 enumerated factors set forth by the Supreme Court. Most of the factors deal with irrelevancies for today. For example, is the child being abused? [23 Pa.C.S.A. § 5328(a)(2).] Of course not. There is no abuse. [23 Pa.C.S.A. § 5328(a)(2.1).] Is there a continued risk of harm to the child? No. We were concerned previously that the child might harm a parent, but that doesn't seem to be the case now because the location has changed.

Are Mother and Father capable of providing physical safeguards for supervision of the children? Absolutely. Mother has been diligent in that regard. No less so has Father. Are Mother and Father capable of performing duties on behalf of the children? [23 Pa.C.S.A. § 5328(a)(3).] Yes.

Is there a need for stability and continuity in the child's education, family life, and community life? [23 Pa.C.S.A. § 5328(a)(4).] Well, that is the lynchpin, because by changing custody that stability that they've had for some years and that continuity will be altered. But we believe on an educational level, and as a family unit, that the benefits of that change would certainly outweigh any social burdens they might encounter.

Mother does have extended family here, more so than Father. [23 Pa.C.S.A. § 5328(a)(5).] That is a plus on Mother's side, but that is outweighed by the fact that there are strong sibling relationships here. [23 Pa.C.S.A. § 5328(a)(6).] I didn't ask [J.C. or D.C.] if they had a preference. [23 Pa.C.S.A. § 5328(a)(7).] Not that they are not capable of intellectualizing a preference, but I didn't think it was important. But [H.C.] certainly has a preference and we believe that it is a mature decision, based upon his good judgment and what he sees as happening on the ground now.

Have the parents tried to turn the children against each other? Certainly not intentionally, and there is no domestic violence attendant here. [23 Pa.C.S.A. § 5328(a)(8).]

Are the parties capable of maintaining a loving and stable and consistent relationship in nurturing their children? [23 Pa.C.S.A. § 5328(a)(9).] Absolutely. Both are equally capable. Is Mother attuned to the physical needs of the children? [23 Pa.C.S.A. § 5328(a)(10).] Yes. Of that[,] there's no question. But it is Father who we believe, based upon the evidence, is more likely to attend to the emotional and developmental and educational -- in the case of [H.C.'s] -- special needs of the children.

The proximity of the residences of the parties. [23 Pa.C.S.A. § 5328(a)(11).] I said before that [J.C.] wished you lived around the corner from each other. That's a wish. It will have to stay a wish. It's 51 miles away. But remember it was Mother who returned to Southampton. I'm not criticizing that decision. It is what it is.

Is there an ability to care for the child in the absence of a parent? Child care arrangements which may be necessary? [23 Pa.C.S.A. § 5328(a)(12).] Yes, Father could do it. He has support from [Stepmother]. Can Mother do it? Yes. She has support from her family, many of whom live in the area.

Is there conflict between the parties? [23 Pa.C.S.A. § 5328(a)(13).] You betcha. I think it will continue until they figure out that it gets to be very expensive to fight this war.

There's no drug or alcohol abuse history by either Mother and Father, nor is there any debilitating physical or mental condition attendant to either. [23 Pa.C.S.A. § 5328(a)(14), and (15).]

N.T., 4/2/14, at 19-22.[4]

---

[4] We note that the trial court did not specifically make its finding on the record regarding section 5328(a)(1) with regard to any of the Children. Nevertheless, Mother states in her brief that she is satisfied that the trial court "carefully considered" the sixteen factors set forth in section 5328(a) with regard to H.C. *See* Appellant's Brief, at 7. It appears that the trial court did not weigh this factor against either party.

Mother first argues that the trial court committed an error of law or an abuse of discretion by ignoring the findings and opinions of the expert that the parties mutually agreed upon, Diana S. Rosenstein, Ph.D. Mother asserts that both Dr. Rosenstein and the prior expert conducted custody evaluations and recommended that Mother should be awarded primary physical custody. Mother complains that, in its opinion, the trial court did not address the majority of Dr. Rosenstein's findings. Mother acknowledges that the trial court may choose not to follow the expert custody evaluator's recommendations, but she asserts that the record must support the trial court's decision. Here, Mother alleges, the trial court refers only briefly to Dr. Rosenstein's fifty-page report and her testimony in court. Mother urges that the trial court erred as a matter of law, because it did not consider the expert report and testimony.

In *M.A.T.*, we stated as follows:

> The trial court was under no obligation to delegate its decision-making authority to [the custody evaluator]. *See, e.g., K.W.B. v. E.A.B.*, 698 A.2d 609, 613 (1997). It is an abuse of discretion, however, for a trial court to dismiss "as unpersuasive, and to totally discount, uncontradicted expert testimony. *Murphey [v. Hatala]*, 504 A.2d [917,] 922; *see also Rinehimer v. Rinehimer*, 336 Pa. Super. 446, 485 A.2d 1166, 1169 (1984) (while not required to accept their conclusions, "[t]he lower court was obligated to consider the testimony of the two experts[.]"); *Straub v. Tyahla*, 247 Pa. Super. 411, 418 A.2d 472, 476 (1980) ("[W]e conclude that the lower court abused its discretion in totally discounting as unpersuasive the expert opinion testimony of appellant's testifying psychiatrist."). Accordingly, while a trial court is not required to accept the conclusions of an expert witness in a child custody case, it must consider them, and if the trial court chooses not to follow the

expert's recommendations, its independent decision must be supported by competent evidence of record. **_See Nomland v. Nomland_**, 813 A.2d 850, 854 (Pa. Super. 2002) ("To say that a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have competent evidence to support it. So long as the trial court's conclusions are founded in the record, the lower court was not obligated to accept the conclusions of the experts.") (citations and quotation marks omitted).

**_M.A.T._**, 989 A.2d at 19-20.

The trial court stated the following:

In the case _sub judice_, Mother first argues that this court abused its discretion by ignoring the testimony and custody evaluation completed by Diana S. Rosenstein, Ph.D. Mother alleges that this court "completely ignored" her conclusion that Mother should have primary custody of the children.

Initially, it must be noted that this court is not bound by the opinion of an expert witness. **_See Nomland v. Nomland_**, 813 A.2d 850, 854 (Pa. Super. 2002).

With respect to the amount of weight a court is to place upon expert testimony in custody matters, the Superior Court has stated the following:

[W]hen [an] expert evaluation is uncontradicted or unqualified, a child custody court abuses its fact finding discretion if it totally discounts expert evaluation. To say a court cannot discount uncontradicted evidence, however, is merely to rephrase the requirement that a child custody court's conclusion have "**competent evidence to support it**." So long as the trial court's conclusions are founded in the record, the lower court [is] not obligated to accept the conclusions of the experts.

**_Id._** (emphasis added).

Contrary to Mother's assertion, this court did not "ignore" Dr. Rosenstein's evaluation and testimony in reaching our decision. Our Order, cited _verbatim_ above, specifically discusses Dr. Rosenstein's report and testimony, including her conclusions

- 14 -

that the children are "emotionally stirred up" as a result of the divorce and custody battle, as well as her finding that the children are "depressed" and suffering "psychologically."

We credited her testimony that a change in custody would be difficult for the children[;] however, in our view, we determined that Dr. Rosenstein's conclusions were not totally dispositive. Specifically, we cited the fact that children are resilient, and we also cited [H.C.'s] testimony, who already resided with Father, that he has already made friends and acclimated well to his new home and school.

Further, Dr. Rosenstein's report and testimony was only one factor contemplated by this court in reaching our decision to grant Father primary custody of all three children. We focused upon the troubled history of the oldest child, [H.C.], while he lived with Mother in Warminster. [H.C.'s] learning disability and aberrant behavior were recurring themes throughout the history of the litigation.

In our Order, we outlined and discussed the reasons for deviating from the recommendations of Dr. Rosenstein. We focused our analysis on Mother's voluntary relinquishment of custody of [H.C.], and the vast improvement in his behavior and academics while living with Father in Chester County. We outlined the positive steps Father and his new wife have taken to assist [H.C.] in this transition.

We discussed the children's preference, or lack thereof, with regard to custody. [H.C.] clearly wants to live with Father. Both [J.C. and D.C.] were more equivocal. [J.C.] stated that she would like "50/50" custody if Father lived closer to Mother. Because the children get along well together, coupled with [H.C.'s] vast improvement while living with Father, we granted primary custody to Father. We were also mindful of the strong policy in our law that in the absence of compelling reasons to the contrary, siblings should be raised together whenever possible. *See In re Davis*, 465 A.2d 614 ([Pa. Super.] 1983). We certainly highlighted the importance of not separating the siblings in our prior Opinion of November 23, 2010.

This court did not "ignore" Diana S. Rosenstein's custody evaluation report and testimony. Her findings and recommendations were contemplated by this court in reaching

our determination that Father should have primary custody of the children. Thus, it was within our discretion to reject the conclusions of Diana S. Rosenstein.

Trial Court Opinion, 5/19/14, at 18-20.

We find that the trial court considered Dr. Rosenstein's expert recommendation, and that its decision not to follow her expert recommendation is supported by competent evidence of record. *M.A.T.*, 989 A.2d at 19-20; *Nomland*, 813 A.2d at 854. Thus, we find no error of law or abuse of discretion.

Next, we address Mother's second issue on appeal. Mother argues that the trial court committed an error of law and/or abused its discretion by failing to fully probe the impact that the custody order, in changing primary physical custody to Father, will have on the two younger children. Mother states that the trial court carefully considered the sixteen custody factors to determine the effect of the order on H.C., and concluded that, since the change would be in H.C.'s best interest, it must also be in the best interest of D.C. and J.C. Mother asserts that the two younger children are being forced to have a complete change in their social structure because they did not want to choose against either parent.

Mother explains that H.C. has exhibited violent and threatening behavior while living in her home, so she entered a split custody agreement with Father to have primary physical custody of H.C. Mother states that, under the split custody arrangement, the Children see each other every

weekend. Mother suggests that the trial court should continue the split custody arrangement, because the move to Father's residence will have a negative impact on D.C. and J.C., and Father may use his additional custody time to alienate the Children against Mother. Mother cites **L.R.F. v. P.R.F.**, 828 A.2d 1148 (Pa. Super. 2003), for the proposition that a split custody arrangement may be appropriate where compelling reasons exist.

With regard to Mother's argument, the trial court stated as follows.

> Both counsel for Mother and Father were present during the *in camera* interviews. **See** Pa.R.C.P. 1915.11(b). According to the official court stenographer, the testimony of the children taken during this session is approximately 30 pages long in the draft of the Notes of Testimony. Mother's counsel had the absolute right under our Rules of Civil Procedure to interrogate the child during the *in camera* interviews. **See id.** Mother's counsel was free to ask any questions he deemed appropriate and relevant to the issue of custody, and at no time did this court cut off or interrupt Mother's counsel's questioning of the children. Before concluding each interview, this court asked both counsel if they had any more questions for the children.
>
> At that time, if Mother's counsel believed that this court did not receive an accurate representation of the children's wishes, he had ample opportunities to question the children further to flesh out their preference with regard to custody.
>
> Mother's disagreement with this court's Order does not give her the right to inaccurately characterize the proceedings to support her position. As noted by our Order, we fully considered the children's preference regarding custody in conjunction with the three (3) full days of testimony during this custody proceeding.

Trial Court Opinion, 5/19/14, at 22-23.

In **Johns v. Cioci**, 865 A.2d 931, 942 (Pa. Super. 2004), a panel of this Court reiterated "the policy in Pennsylvania is to permit siblings to be

raised together, whenever possible," including half-siblings, and, "[a]bsent compelling reasons to separate siblings, they should be reared in the same household to permit the continuity and stability necessary for a young child's development." *Id.* at 14 (citations and quotations omitted). While this Court has emphasized the policy that siblings should be raised together, this consideration alone is not determinative of which party should be granted primary physical custody of a child. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.") (citation omitted).

Here, the trial court discussed its decision regarding custody and the weight it placed on the Children's preferences in relation to its consideration of section 5328(a)(6) and (7), and Dr. Rosenstein's expert opinion. *See supra*. We find ample, competent evidence in the record to support the trial court's decision regarding separation of the siblings in this matter. *C.R.F. v. S.E.F.*, 45 A.3d at 443. Thus, we find no error of law or abuse of discretion.

In her third issue, Mother argues that the trial court ordered a change in custody that amounts to a relocation of the Children, since the parties reside fifty-one miles apart. Mother asserts that the trial court should have

considered not only the best interest factors under section 5328(a), but also the relocation factors set forth at section 5337(h).[5]

In its opinion, the trial court addressed Mother's argument as follows:

Mother next argues that our Order essentially rises to the level of a relocation and the procedural requirements necessary for a relocation in a custody matter have not been met. We disagree. In this case, no party is seeking to relocate from their current residence. Both Mother and Father have no intention of relocating from their current residence. Further, Mother and Father both relocated from their marital home in Royersford, Montgomery County to their respective homes in Chester County and Bucks County.

Mother and Father have been exercising their custodial rights in their respective locations since September of 2013. There have been no allegations from either parent that their custodial rights have been impaired because of the distance between their homes. *See* 23 Pa.C.S. § 5322(a) (Relocation is defined as a change in the child's residence that significantly impairs the ability of the non-relocating parent to exercise custodial rights).

Our Order also does not interfere with Mother's ability to attend school or extracurricular activities, as it does not take effect until after the current school year is completed. *See* *C.M.K. v. K.E.M.*, 45 A.3d 417 ([Pa. Super.] 2012) (Significant impairment includes the inability to attend school activities, extracurricular activities, and medical appointments).

Thus, our Order does not constitute a relocation. Even assuming it did, the relocation of Father from Royersford,

---

[5] We observe that Father argues that Mother waived this argument pursuant to Pa.R.A.P. 302, for Mother's failure to pursue the relocation issue in the trial court. Rule 302(a) provides that issues not raised in the trial court are waived, and may not be raised for the first time on appeal. Mother contended in her concise statement that the trial court's order essentially rises to the level of a relocation. Mother implies that she did not understand that the trial court would order a relocation until the trial court entered its order. We, thus, will not find the issue waived.

Montgomery County to Coatesville, Chester County[,] does not significantly impair Mother's custodial rights.

Trial Court Opinion, 5/19/14, at 22-23.

Recently, in **D.K. v. S.P.K.**, 102 A.3d 467, 477-78 (Pa. Super. 2014), a panel of this Court held that the trial court must consider section 5337(h) factors only where a parent is relocating with a child. In the instant matter, the trial court's reasoning for determining that there was no relocation involved, and, thus, no need to consider the section 5337(h) factors, is consistent with this Court's decision in **D.K.** Thus, we find no error of law or abuse of discretion.

In her fourth issue, Mother argues that the trial court failed to provide for split physical custody for the summer of 2014, as the order provided for Mother to have physical custody of the Children every other weekend in the summer, and was to take effect when the school year ended. Mother asserts that the parties had previously shared custody in the summer. She contends that the two older children, both H.C. and D.C., testified that they were looking forward to summer employment in her area.

In its Opinion dated May 19, 2014, the trial court adequately and accurately addressed this issue, as follows:

In our Order, we addressed Summer, 2014, Summer, 2015, as well as all major holidays. The Order states as follows:

Effective with the first Sunday after the school year in June 2014, all three children, [H.C., D.C., and J.C.,] shall be in the primary custody of Father, [S.C.]. Mother shall have partial custody of all three children on the first,

third, and fifth weekends as they occur, usually four per year, from Friday at six o'clock p.m. to Sunday at six o'clock p.m.

We are mindful of the fact it's important for the children to spend as much quality time with Mother as they can, so we will also direct that on national holidays, for example, Martin Luther King Day, Presidents Day, Good Friday, Memorial Day, Labor Day, Columbus Day, Veteran's Day, when those holidays fall on a Monday and there is no school, the children shall be in the custody of Mother, from ten o'clock a.m. until six o'clock p.m.

Whatever holiday schedule the parties have in place now will remain. I assume all holidays are equally important to the families. If they cannot agree as to important holidays, we will direct that as to Easter Sunday, Christmas Day and Thanksgiving that [sic] the parties shall alternate on an even-year and odd-year basis[,] with Father starting in the even years and Mother in the odd-numbered years.

The children may have Spring Break and Fall Break, if their school provides that and it's at least a week in duration. Mother shall have the weekdays of the Spring and Fall Break and Father shall have the weekends on Mother's schedule.

What do we do about the Summertime? Well, while school is out, Mother is capable of taking custody of the children during the Summertime and the concerns are not the same, because they don't have to get up and go to school every day. We'll direct that as soon as school ends in the year 2015, that [sic] Mother shall have the first five weeks of the summer and Father shall have Mother's partial physical custody schedule for the remaining three or four weeks of that summer vacation. The Order will revert back [sic] to Father having primary custody and Mother on a weekend schedule as before.

Trial Court Opinion, 5/19/14, at 23-24. We find ample, competent evidence

in the record to support the trial court's decision regarding the custody of

the Children in the summer of 2014, especially in view of our decision to affirm the trial court's denial of split physical custody of the two younger children.[6]  **C.R.F.**, 45 A.3d at 443.  Thus, we find no error of law or abuse of discretion on the part of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2015

---

[6] Oral argument on this matter occurred in October 2014.  Accordingly, the parties agreed that the issue regarding the summer of 2014 was moot.